O’Neall J.,
delivered the opinion of the Court.
in this case, the grounds of appeal will be better considered, by reversing the order in which they are set down.
The 3rd ground is answered and disposed of, by The Bank v. Gourdin et al, 1 Spear’s Eq. Rep., 458-59; in that case it was ruled, that an unregistered mortgage is not void.
The 2d ground is equally untenable. It is plain, as is said in the report, that the Act of 1698 was intended to guard against double mortgages, or sales by the same person of the same goods. The preamble, 2 Stat., 137, P. L. 3, recites the mischief to be remedied, to be, “that the want, or neglect of registering and recording of sales, conveyances, and mortgages of lands and other goods and chattels, hath encouraged and given opportunity to several knavish and necessitous persons, to make tioo or more sales, conveyances, and mortgages of the same, plantation^ negroes and other goods and chattels, the first sale, conveyance and mortgage being in full force and not discharged, <&c.” This shews most clearly that the mischief was double mortgaging, selling or conveying by the same person, for the remedy of which the Act of 1698 was enacted. It is plain that the first clause of the Act, in terms provides for this mischief, and no other. The provisions both as to land and slaves postpone the first unrecorded to the second recorded sale, conveyance or mortgage. The case of Barnwell v. Porteus, 2 Hill Ch. R., 219, was the case of a sheriff’s deed of a part: of the land mortgaged, sold under a fi. fa, against the mortgagor, in which it was held that, that deed, being first put on record, obtained precedence over the unrecorded mortgage. The distinction to which 1 have adverted was not considered in that case. Still *124 it may be, and I think was rightly decided, on the ground that the sheriff’s deed was the same as a second conveyance by the mortgagor himself. But if it were so, that a mortgage, sale or conveyance, by some third person deriving title from the first vendor, grantor or mortgagor, could be considered within the terms of the Act, and thus gain a precedence by being first on record, still the plaintiff could not gain any thing. For when Harley’s mortgage was foreclosed by sale, the plaintiff’s bill of sale was unrecorded. At that time, therefore, he and Harley stood alike, as to the Act of 1698. The foreclosure by sale of personal chattels, is equivalent to a foreclosure by a decree of a Court of Equity. The mortgagor’s equity of redemption, and the whole estates of mortgagee and mortgagor thereby pass to the vendee. If there were nothing then existing to shake the mortgagor’s right to foreclose, any thing subsequently done by a third person cannot have any such effect. There is still however another decisive objection to the plaintiff’s title. When he brought his action, his bill of sale was unrecorded: and therefore, in that point of view, his title was inferior to that derived from Harley.
The first ground to my mind presents no difficulty. The inquiry is, in whom was the legal title to the slave? There can be no doubt, it passed under the mortgage to Harley. A sale of the same chattel to another person conveys no right, unless it be the right to redeem. Against such a vendee, an action of trover would lie by the mortgagee, and against such an one he could recover, even before condition broken. Spriggs v. Camp, 2 Spear., 181; so too, as in Bellune v. Wallace, 2 Rich., 80; a mortgagee to whom a chattel was mortgaged, as an indemnity for- a collateral liability, was held to be entitled to recover against a purchaser. It is plain, therefore, that the legal estate is in the first morgagee. If this be undivested by law, it seems to me strange, how in a Law Court a purchaser can be protected. It is true, if the party were obliged to resort to equity, and his title to relief rested on an equitable, not a legal right, that in such case the purchaser for valuable consideration without notice would be protected. But in a Law Court such a defence is worth nothing, except on a question of a *125 fraudulent conveyance. Then it is a mere circumstance from which fraud may be presumed. The party here having the legal estate, has possessed himself of his property, and sold and delivered it to another: the purchaser claims it; but in such a case, when the legal title is against him, his claim is in vain. It may be, if he had sued Harley or the sheriff, in trespass for taking the slave out of his possession, he might have stood on a better ground. For in such a case his possession would have been title, until a paramount title had been shewn. In that way he could have put Harley to the proof of an unquestionable title; and then it might have been urged with more plausibility, your title ought not to affect me, because I bought without knowledge of it, and therefore it operated, as a legal fraud, upon my rights. I am not prepared however, even in that point of view, to say the argument could operate; but now, as the case stands, it can certainly have no effect.
The motion is dismissed.
Richardson J., Evans J., and Frost J., concuiTed.
Per Wardlaw J.
From statements and admissions made at the bar, it appears that the money which the mortgage of J. J. Stallings to Harley was intended to secure, became due one year after the date of the mortgage, and so the condition of the mortgage was broken on 13th Dec., 1837: that before breach of the condition, the slave had been transferred by delivery from the mortgagor to Walker, and from Walker to Stansell, valuable and full considerations having been paid for her both times, but no bill of sale having been made at either of these transfers: that the seizure of the mortgagee was the first notice which, as it appeared, the plaintiff or any of the intermediate owners between him and the mortgagor had of the mortgage: and that all of these persons lived within twelve miles of the mortgagee.
I was at first inclined to think that, as notice is generally and properly said to be equivalent to registration, the notice of ownership in the possessor of a chattel, which usually proceeds from open possession accompanied by a claim of ownership, must be presumed to have been had by the mortgagee concerning the plaintiff’s title long before the seizure, and such notice *126 might be held to be equivalent, as regards the mortgagee, to the registration of the plaintiff’s bill of sale. But upon reflection I have been persuaded that this is wrong. If it were right, the privity between a mortgagee and a purchaser, each of whom had taken his conveyance without notice of the other’s, and had neglected to register, would be determined by proof that one had subsequently acquired notice of the other’s conveyance, the other being still ignorant of his:—a result which in many instances would be absurd and unjust. The notice which is equivalent to recording, is notice before taking a conveyance—such notice as may guard against harm from a prior unregistered conveyance. As to persons equally unaffected by notice when their conveyances were severally taken, the Act of 1698, without regard to subsequent information, seems, in encouragement of registration, to propose priority of right as the reward of superior diligence. Notice, which is not equivalent to registration, may however be a very important circumstance in a question of fraud, legal or moral, as I will endeavor to show hereafter.
A registry is designed for public information, and it can be searched only by indexes referring to names. No search would usually disclose conveyances made by unknown third persons, of the same property which has been mortgaged or sold by an instrument whose validity is under investigation; and often the conveyance of a third person, if found, although containing the same property, might not afford the means of identification. There may then be much propriety in the opinion expressed on the circuit, that the Registry Act of 1698, contemplates in its order of precedence, only sales and mortgages by the same person. But the act is not express, and its words may well cover all sales and mortgages of the same property. In the case of Barnwell v Porteus, (2 Hill Ch. R., 220,) whilst an unregistered mortgage had precedence over a judgment, it was made to yield to a registered conveyance of the same property by a sheriff, who sold under an execution against the mortgagor. I do not see wherein a purchaser from the sheriff is, as regards registry, entitled to any advantage over a purchaser from one to whom the mortgagor has sold. Nor can I see why either *127 of these purchasers should be regarded with less favor than a purchaser from the mortgagor himself, although the mortgagee and others who might search the registry, would probably be less apt to find the conveyance to either of the two former purchasers, than that to the latter one. No diligence in any of the three could have detected the mortgage, which a slothful or fraudulent mortgagee had neglected to register; and nothing in the spirit of the Act forbids that he who first registers should have the reward of his diligence.
If then in this case, the plaintiff’s bill of sale had been registered before the commencement of his suit, priority of right might have been acquired by him : but I cannot think that by an act done after bringing his suit, he could vest in himself a right which he had not before, and which that suit should establish.
What is called the foreclosure of the mortgage, I consider an immaterial circumstance. It was only the seizure of the mortgaged chattel, made by the sheriff as agent of the mortgagee, but just the samo as if it had been made by the mortgagee himself. After it, the mortgagee was only in the same condition as if he had purchased from the mortgagor, and taken possession under a bill of sale—he had added the notoriety of possession to his paper title. A purchaser from the mortgagee, with notice of others rights, (in which condition the present defendant is) stands as the mortgagee himself. Suppose the younger of two mortgages, both unregistered, had been foreclosed; that is, the mortgagee had seized after condition, broken, and even sold to a purchaser with notice: could he, or the purchaser, have claimed, by that seizure and sale, to have acquired rights superior to the elder mortgage? or superior to a third and junior mortgage, which was registered? It is the notorious possession, which after seizure and sale, might protect the mortgagee or the purchaser from him, from any subsequent sale or mortgage; not any resemblance to a solemn judgment, which the seizure and sale may be supposed to bear. Against prior and better rights, this notorious possession alone would not suffice: if it would, this plaintiff’s case would be irresistible on that ground.
*128 Such possession, with lapse of time and other circumstances, may however acquire strength to withstand claims which were originally superior.
In this case, the plaintiff himself had possession three years and eleven months before the mortgagee seized: four years would have given him an unquestionable title against Ihe mortgagee by force of the Statute of Limitations. The possessions of the intermediate purchasers between him and the mortgagor, added to his own, make the time of six years and two months from the breach of the condition of the mortgage, to the seizure. I will not now inquire whether the plaintiff may not well claim, against the mortgagee, to tack the other possessions to his own, so as to make up the time for the statutory bar ; for that point has not been argued. But I regard the great time during which the mortgagee, after breach of the condition, permitted the slave to remain in the possession of the mortgagor, and the persons who, without notice, purchased from the mortgagor, all in his own immediate neighborhood, as furnishing evidence of fraud, which if not ipso facto conclusive, under our cases, (as elsewhere it is held to be) is strong—at least sufficient to throw the burden of explanation upon the mortgagee, and such as ought to prevail against any but clear proof of fairness. This ground is not taken in the grounds of appeal, although it has been argued at the bar ; and I understand from the J udge who presided on the circuit, that the report, drawn in reference only to the grounds of appeal, does not show much of the case as it transpired, and that the plaintiff has on this ground no just cause of complaint. Agreeing as I do in the decision which has been made upon the grounds taken in the appeal, I call attention to this ground and write this opinion, only to guard against this case being drawn into precedent in others, where the circumstances of fraud may be properly presented for adjudication.
Purchase for valuable consideration without notice, is matter of defence and not ground of action even in equity—when pleaded it may avail in equity against equitable rights, but is insufficient even there to bar a legal demand: and it is inapplicable to a Court of Law. But even in a Court of Law, a purchaser *129 •without notice may in many instances, like a creditor, rely upon the badges of fraud, to render a claim which is urged against him fraudulent encl void. Although possession by a mortgagor after breach of condition is not viewed with so much suspicion ordinarily, as possession by a vendor, after sale, yet when it is long and unexplained, it is a badge of fraud: and against an innocent purchaser, or a creditor who has been deceived by it, may be urged to overthrow the claim under an unregistered mortgage.
The registry of a mortgage being notice or means of notice to the whole world, the mortgagee is thereby somewhat relieved from blame for the harm which may come to others from his permitting the possession to remain with the mortgagor or his assigns: but even against a registered mortgage the possession of an innocent purchaser from the mortgagor for four years, becomes a perfect title. How difierent the case of an unregistered mortgage of a chattel! what diligence can guard against it? Some difference exists between a slave and other chattels, but even as to a slave it is true, that the title is not required to be in deed or even in writing—that possession with claim of property is the usual evidence of title—that in a majority of instances sales are made by delivery only—and that of the bills of sale taken in the State out of Charleston, not more than one in a hundred is registered in the office of the Secretary of State. One in the situation which this plaintiff (if an innocent purchaser) occupies, may then well say that he insists not upon presumptions of injury—like a creditor, whose credit may have been extended before the mortgage was taken, or with litllo knowledge on his part of the mortgagor’s property; but upon injury actually sustained in the payment of a full price for the slave. He may well maintain that the negligence of the mortgagee has been gross: and if it has not proceeded from actual fraudulent intent, has been productive of the same consequences, and should be visited by the same penalties as fraud. If the mortgagee should answer that his mortgage was recorded in the office of the Register of Mesne Conveyances, that is no registry: but if by it notice was given to the plaintiff, then the case would not be the case we have been considering.
*130 Our Act of 1843, concerning the recording of mortgages, has so altered the law, that many cases are not likely to occur to which the decision now made will be exactly applicable. But it will be observed that that Act relates only to mortgages—the recording of bills of sale and other conveyances of personalty still falling under the Act of 1698. If full force be not given to the transfer of possession as notice to the world, it may happen that a fraudulent vendor after having sold and transferred possession to an honest purchaser, without bill of sale, may give a bill of sale of the same slaves or other chattels, in the absence of such chattels, to another honest purchaser, who knew of the seller’s former ownership, but had not heard of his late sale to the first purchaser. 'Against such dishonest practices no security can be had without taking and registering a written conveyance. To this result I desire to call attention: whilst I insist upon the unfavorable inferences which should always be drawn from a vendee’s permitting the possession to remain, so that the vendor may effect the more common fraud of a second sale, to which the purchaser is seduced by the evidence of title which possession enables the vendor to display.